Let's turn to the next case, which is 22-55, Osama El Omari v. Andrew D. Frank et al. And let me just ask the courtroom deputy one thing. Could you just indicate how many minutes each side wanted there? Before we begin, as you settle into your seats, it came to our attention that this morning, counsel for the athletes indicated for the first time a desire to divide oral argument. We're going to grant that. However, the appropriate practice in this court is that if you wish to make such a request, it should be in writing in advance, and it should not be done at the time of oral argument. We're fine with accommodating it. But what I will say is that we are going to keep you collectively to the 10 minutes. And because we have a tendency sometimes to run a minute or so over, we're not going to be doing that. So we're going to be holding the timeline very tight. When you see the red light, you stop. Yes, sir. Thank you very much for the accommodation. We understand the court's direction. That's great. So why don't we start with Mr. Moore for the appellant? And you would like to reserve two minutes for rebuttal. Is that right? Yes, sir. Okay. Why don't you proceed? May it please the court. I'm Scott Moore, counsel for appellant. With respect to the RICO count, your honors, I would like to point your attention to the recent case of Alex versus McKenzie, which we submit as controlling in this case. The police assert that the regulatory right, the regulatory filing in this case, it issued a fair of filings have not given rise to a financial damage to Mr. And the Alex case does indeed show that a RICO cause of action can apply to a regulatory filing. Can you just take us? Let's drill down all the way. What is your RICO predicate? The RICO. There are a statutorily enumerated list of RICO predicates, correct? Yes. Farrah is not one of them, correct? That's right. So what is your RICO predicate that you're claiming? Is it wire front wire and mail fraud? And you would take the view that if the government were to come in here in a criminal case because it's the same standard, right? Except for the burden of proof that if they charge someone with wire fraud and the allegation was you committed wire fraud by what? Failing to file under Farrah, that that would state. The criminal offense, the the false fire. Is that a yes or no? Would you repeat that question? Yeah. Is it your view that if the government came in with an indictment and it said count one wire fraud, the defendant committed wire fraud by failing to comply with the Ferris statute. Are you saying that they have stated a criminal offense? No. Then how are you stating an offense for civil purposes? Because there was a an affirmative false filing under Farrah. OK, what's the prop? You would agree that there has to be a government. There has to be a property injury or deprivation for wire fraud. Would would you not agree with that? Right. Your Honor. What's the property? The property is the Mr. L. Amari's financial and property interest in his employment from which he was fired. I think you're confusing the RICO sort of injury sort of thing with with the wire fraud predicate. Right. If I commit wire fraud against you, right, I'm inducing you to park with your property or something like that. If someone's making a Farrah filing with the government, how is a third party being thereby deprived of property? What's the causal link between some damage to you and their failing to file as a foreign agent? Well, that's the that's the Alex point. Alex dealt with wire fraud. Alex dealt with RICO. Right. I'm talking about wire fraud. We have we're getting we're a level below deeper than Alex. We're talking about the RICO predicates. You need to have RICO predicates to support RICO. Put aside pattern. Put aside, you know, enterprise. We're just talking about predicates here. How do you state a wire fraud offense? The again, the the the false filing of the Farrah. But for that false filing, the Appleys, Mr. Frank and Hanjani could not act as they did. And that's that's a causation. That's the ultimate injury. That is not what the fraud. That's not the property affected by fraud. The fraud has to defraud someone of particular property. You're looking at it. It makes me wonder if you understand that element of wire fraud. Well, again, I'm I'm still trying to bring this case within the ambit of Alex. But again, you're missing the point. Alex is about those bigger picture RICO issues. Right. But RICO needs to be built on predicate acts to begin with. Right. All right. And then you have to string them together in a pattern. You have to show continuity. You have to show that they were carried out in the course of an enterprise, all those things. But let's just talk about the basic building blocks, which is your predicate. And you're saying that a fair violation is a wire fraud. And again, I'm trying to illustrate that through this hypothetical. If the government tried to bring a standalone wire wire fraud count, count one against someone in a criminal case because it's parallel civil or criminal. The only difference would be the standard of proof. Right. You're saying that someone could be charged with wire fraud against a third party by virtue of failing to file or filing an incorrect FARA registration with the government. Is there any case that has ever said that? Alex again. But why don't you move to another topic? Because if you keep coming back to Alex, you're not dealing with the question of predicate acts, which were not at issue in Alex. Do you have any other arguments you'd like to address? Yes, Your Honor. Under the prima facie tort claim, Your Honor, the focus here for the court is the lower court erred in the interest analysis. And as we pointed out in our brief, the execution of the threat made in London, which in New York where the New York office was located, that's the locus of the tort. In the last, in the defamation claim, again, the court erred in its conflict of laws analysis. And the purpose is the regulation conduct and the tort is the locus was in New York. Actually, while you have a minute left, I have a separate question if I can just shift your attention to the page affidavit, because I wanted to give you an opportunity to respond to one question I had. In the page affidavit, you're suggesting that there was malfeasance involved in various proceedings in the UK. Do I understand that properly? Yes, Your Honor. And my understanding is you were suggesting that that would provide you with an alternate predicate under RICO for obstruction of justice. Yes, Your Honor. Explain how obstructing a proceeding in a foreign country falls within 18 U.S.C. 1512. Well, it's clear that if the court was in the United States, that would be triggered. Correct. So how does that matter then? The link is because El Amari had a case pending here in the United States, and that evidence which under the page affidavit was destroyed, that would have been relevant to the U.S. case which was pending at that time. So that's the link. So you're saying he obstructed the American case by obstructing a British case? Yes, because the evidence which was destroyed under the page case was directly relevant to the case pending here in the United States. Okay. You've reserved two minutes for rebuttal, so why don't we hear from counsel on the other side. Thank you, Your Honor. And Mr. Barger, are you going to start? I am willing, yes, Your Honor. Okay, we're going to start you at three minutes. Yes, Your Honor. Again, I'm warning you, when the red light goes off, it's next batter up. Understood. We're hoised on our own petard by dividing it up, so we're stuck with that. Your Honor, good morning. My name is David Barger. Daniel Filor and I represent three defendants that are charged only in count one, Carth Communications, a public relations company here, Andrew Frank, and Amir Hanjani. As I mentioned, we've divided it up. I'll only address count one where only my clients are sued in count one. And the court below was not only correct in dismissing our count, but was correct in dismissing the entire complaint. With regard to the RICO count, there are so many defects with that complaint that the court found below, I can't even address them in the three minutes, so I want to highlight a couple of the points and address the questions that the court asked. The court is exactly right. The simplest one, the predicate that he relies upon are the FARA filings. He's abandoned the other two predicates. The FARA filings, mail fraud, wire fraud, we all know from years as prosecutors that a scheme and artifice to defraud you of your property. And his claim is that Mr. Alamari is the victim. There's no property of Mr. Alamari in this case. At best, you would argue that by filing it with the Department of Justice, and it's not even a license, it's a disclosure provision, that somehow that's property of the U.S. government, which is not the victim here, but the Supreme Court has said in Cleveland that's not property, that these regulatory type filings are not property. So not only is it not property, it's not Mr. Moore's property, and therefore the FARA predicate simply fails, aside from the fact that Judge Merrill also found that the FARA filing could not be fragmented to create continuity in the alleged scheme. In addition to that, Mr. Alamari never pled damages from the false FARA filing. That goes back to your question, Judge, about, and I think you also raised proximate cause, that by filing a false document with the Department of Justice, Mr. Moore was directly damaged, which would be the necessary requirement, and he's not pled facts on that, and Judge Merrill found specifically that he did not allege damage, and he waived that argument, which brings us back to Alex, which was a proximate cause ruling by the court, finding that the plaintiff had alleged sufficient facts about proximate cause, not getting into the predicates. The Alex opinion had nothing to do with the regulatory filing, if you looked at the district court case below. I know there are other, oh, I've got 30 seconds. I think I've covered it. I talked faster than I planned, and so thank you again for your patience and attention. Thank you very much. Unless there are questions. Very efficient, Mr. Moore. We'll jump in if there are questions. You'll know. Yes, sir. Thank you very much. Okay. Mr. Is it Raphael or? Raphael. Raphael. Mr. Raphael, you have three minutes. Great. Thank you. Brian Raphael, appearing on behalf of Appelese, Decker, and Neal Gerard. I'll also thank the court for their indulgence with us putting the time up this way today. I'll be addressing the defamation per se claim arising out of the intelligence online article, which is the only claim asserted against all Appelese. Judge Moreau dismissed this claim for four independently sufficient reasons, and as we've stated in our papers, all of them were well-founded. I'm just going to address a few that were raised in Mr. Alomari's reply. First, the article does not accuse Mr. Alomari of committing any crime. Instead, it merely mentions legal proceedings that Ras al-Khaimah authorities were pursuing to recover funds they believed Mr. Alomari and others had embezzled. In Mr. Alomari's reply brief, he finally recognizes this distinction, but now argues for the first time that Appelese didn't put forth sufficient evidence of this belief. But at the pleading stage, the burden's on the plaintiff to adequately state his claims, which he cannot do. It's undisputed that Ras al-Khaimah authorities investigated Mr. Alomari for embezzlement, which led to his trial and conviction in absentia. At minimum, based on these legal proceedings, it was substantially accurate for the author of the article to conclude that Ras al-Khaimah authorities believed Mr. Alomari may have embezzled funds, which is all that is required to satisfy the fair reporting privilege under either New York or North Carolina law. Mr. Alomari also argues in his reply that the article on its face somehow indicates that Deckert or Mr. Gerard were sources for the statements contained therein. I invite the court to read the article. You will find no such attribution in there. Indeed, the article is clear it relies on public knowledge. The article notes that the author consulted legal proceedings that had been opened in various jurisdictions by Ras al-Khaimah beginning in 2012. And by the time the article was published, Mr. Alomari himself had already publicized the legal proceedings against him in an op-ed in the Washington Post. Unable to address the district court's reasoning, Mr. Alomari quibbles over an irrelevant choice of law issue, citing purported conflicts between New York and North Carolina's defamation law that he did not raise below. But even now, he still does not allege that New York's defamation law would have been any more favorable to him than North Carolina's. To the contrary, page 31 of his opening brief, he argues that his claims would have been less likely to succeed if New York law had applied based on a perceived difference in the fair reporting privilege. As stated in their papers, we respectfully submit that the district court properly dismissed the defamation per se claim and the ruling should be affirmed. That's all I have unless there's any questions. Okay. That was good tempo as well. Why don't we hear from Mr. Feldman. And now we're down to two minutes apiece. May it please the court. I'm Stephen Feldman from Stradley Ronan. I am counsel for Mr. James Buchanan. I'll briefly address the portion of the defamation claim targeting Mr. Buchanan arising out of a purported meeting in London in October 2018, which is part of count three. As appellant concedes, any statements made at the October 2018 meeting are barred by the statute of limitations. As the statements would have been made more than a year before the appellant filed his initial complaint in the district court on March 27, 2020. For that reason, the district court appropriately dismissed the allegations based on that London meeting. And notably, both New York and North Carolina law share the same one year statute of limitations. While the appellant hypothesizes that Mr. Buchanan could have repeated the purported statements in other forums within the limitations period, he's failed to plead any allegations of republication. In addition, the district court correctly ruled that the appellant was not entitled to discovery on a dismissed claim in order to ascertain whether the alleged statements were ever republished. The appellant has not alleged that the district court erred in refusing to allow discovery to determine whether those statements underlying the time-barred claims were ever republished. And even if he had raised that on appeal, this court reviews a denial of discovery using an abuse of discretion standard, and there was no abuse of discretion by the district court. Accordingly, we respectfully request and submit that the district court properly dismiss the defamation claim against Mr. Buchanan, and that the district court's ruling should be affirmed. Thank you very much. Thank you, Mr. Feldman. And finally, we'll hear from Mr. O'Toole. Mr. O'Toole, you have similarly taken two minutes, so you have a hard act to follow. So if you can follow suit in terms of timing. Thank you, and thanks for the indulgences, Your Honor. May it please the court, Patrick O'Toole from Weill Garchall. I represent Longview Partners Guernsey, and I'm going to speak about the prima facie tort, which is count two when it relates to Mr. Buchanan and Longview. The court correctly recognized that the claim fails under both North Carolina law and New York law. In recognizing that North Carolina law applies, the court was correct when it said it applies because the plaintiff lives there, and that's where he was injured. North Carolina has the most significant relationship to this claim, Your Honor. And if we look through the facts, the plaintiff is from North Carolina. Department of Homeland Security visits him in North Carolina, and that visit is specifically tied to the 2018 London meeting where there's an alleged threat to bring him down. And what the complaint alleges is that any allegations underlying that threat or are made to the authorities was a false smear. North Carolina is where the plaintiff lives. It's where he felt any damage to his reputation or any injury from this count. New York has no substantial relationship to the claim. No party is domiciled in New York. Longview is from Guernsey. Mr. Buchanan is from Canada. The October meeting was in London. No New York contact is alleged in the complaint regarding this specific claim. The only New York contacts in the complaint relate to other claims or to other parties, and there's no overriding interest of New York to get involved in this matter. The court was correct that North Carolina should apply. Separately, the court went on to say, hey, even if North Carolina doesn't apply, the claim feels under New York law, and for several reasons. First, relating to the McKenzie case from this court where it's a one-year statute of limitations. Importantly, the statute of limitations, it's duplicative of the defamation claim. Again, McKenzie, it's motivated solely by malice. Again, McKenzie, it feels on that. And separately, below, we argue they feel the alleged special damages, unless there's any questions. Thank you very much, Mr. O'Toole. So let's see, Mr. Moore, you were reserved two minutes for rebuttal. Yes, Your Honor. And you may use as much of them as you see fit. Thank you, Your Honor. In rebuttal, I want to focus on the defamation per se and the prima facie tort. Your Honor, the recitation by the appellees really just mirrors what they had in their brief. And there's no argument about the diagramming out of the conflict of laws, whether there's a conflict or not, with the prima facie tort, and there is no disagreement there. The locus of the tort being in New York, that was not addressed. Where the threat is made in London, the execution of the threat in New York, where the office where El Amari was questioned about, that's where law enforcement would have been contacted, even though he was questioned by a field office in North Carolina. So he was questioned in North Carolina, though, right? Yes. So the fact that someone within the chain of command of the Department of Justice or a law enforcement agency might have made a decision in New York somehow puts the locus in New York. The action is where he is, isn't it? No. The New York law school? No, the office where he was questioned. The office where he was questioned about was in New York. Okay. It was focused on the office in New York. Okay. And so the field office then in North Carolina would become involved because that's where he's located. Okay, I think we understand the argument. Yeah, thank you to all counsel. Thank you, Your Honor. And thank you for squeezing all your time in. We appreciate that from both sides. We will take the case under advisement.